UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW MICHAEL BAMBERG, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case # 1: 18-CV-00337-DB |
| | § |
| COMMISSIONER OF SOCIAL SECURITY, | § MEMORANDUM DECISION |
| | § AND ORDER |
| Defendant. | § |

## INTRODUCTION

Plaintiff Andrew Michael Bamberg ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for Supplemental Security Income ("SSI") under Title XVI. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 24).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 14, 19. Plaintiff also filed a reply. *See* ECF No. 20. For the reasons set forth below, Plaintiff's motion (ECF No. 14) is **DENIED**, and the Commissioner's motion (ECF No. 19) is **GRANTED**.

## BACKGROUND

On January 7, 2015, Plaintiff protectively filed applications for DIB and SSI benefits, pursuant to Titles II and XVI of the Act, alleging a disability beginning on December 15, 2014 (the disability onset date), due to: injuries to his back, knee, head, and neck and attention deficit hyperactivity disorder ("ADHD"). Transcript ("Tr.") 278. Plaintiff's claim was denied initially on

April 9, 2015 (Tr. 18, 250-57, 167-74), after which he requested an administrative hearing. Plaintiff's hearing was held on March 7, 2017. Tr. 18-27. Administrative Law Judge Benjamin Chaykin (the "ALJ") presided over the hearing via video from Alexandria, Virginia. Tr. 18. Plaintiff appeared and testified from Buffalo, New York, and was represented by Carol A. Brent, an attorney. Stephanie R. Archer, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on May 8, 2017, finding Plaintiff not disabled. Tr. 18-27. On February 7, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-8. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his May 8, 2017 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019;

2. The claimant has not engaged in substantial gainful activity since December 15, 2014, the alleged onset date (20 CF'R 404.1571 *et seq*., and 416.971 et seq.);

3. The claimant has the following severe impairments: spine disorder (20 CF'R 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[1] subject to the following limitations: no climbing of ropes, scaffolds or ladders; occasional climbing of ramps or stairs; occasional stooping, crouching, balancing, kneeling and crawling; no exposure to dangerous hazards such as unprotected heights or dangerous machinery; occasional overhead reaching with frequent reaching in all other directions; and no more than moderate noise. The claimant would require a cane for ambulation, and no more than frequent twisting or turning of the neck;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on January 1, 1983 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 18-27.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on January 7, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. The ALJ also determined that, for the application for supplemental security income, protectively filed on January 9, 2015, Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id*. at 27.

## ANALYSIS

Plaintiff asserts two points of error: (1) the ALJ erred in weighing the opinion evidence and relied on stale evidence that predated Plaintiff's worsening condition; and (2) the Appeals Council erred in concluding that the evidence submitted after the ALJ's decision did not have a reasonable probability of changing the ALJ's decision. *See* ECF No. 14-1 at 1, 11-16. The Commissioner argues in response that the evidence of record as a whole supports the ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work, such as an order clerk, telephone information clerk, and account clerk, with some significant additional limitations, including the use of a cane for ambulation. *See* ECF No. 19-1 at 19.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

**I.     The ALJ Appropriately Considered and Weighed the Medical Opinion Evidence.**

Plaintiff disagrees with the ALJ's evaluation of the medical opinion evidence from Michael Rosenberg, M.D. ("Dr. Rosenberg"), a consulting internal medicine examiner (Tr. 371), and Nurse Practitioner Linda Miller ("NP Miller"), at the Pulmonary Group of WNY, L.L.P (Tr. 465). *See* ECF No. 14-1 at 11-16. Plaintiff argues the ALJ did not specifically state what weight he gave to these opinions. *See* ECF No. 14-1 at 12 (citing Tr. 24). In addition, with respect to the ALJ's assessment of Dr. Rosenberg's opinion as "somewhat vague," Plaintiff contends the ALJ should not have then purported to rely on it, but instead, he should have contacted Dr. Rosenberg to clarify the opinion. *Id*. at 13 (citing *Tolhurst v. Comm'r of Soc. Sec.*, 2016 WL 2347910, *5-6 (N.D.N.Y. May 4, 2016) (remanding for ALJ to re-contact consulting examiner where that doctor's opinion was too vague to rely upon in formulating the RFC)). As for NP Miller, Plaintiff argues the ALJ failed to apply the required regulatory factors in weighing NP Miller's opinion; he did not properly consider that she was a treating source; and his reasoning for rejecting her opinion was conclusory, and therefore, not supported by substantial evidence. *Id*. at 14-15.

Plaintiff suffered a back injury in an accident in 2010, but he returned to work as a mechanic for four or five years after that accident. Tr. 80. Plaintiff injured his back again at work in December 2014. Tr. 79-80. Plaintiff was later involved in another automobile accident in October 2015. Tr. 82. Plaintiff's testimony was unclear as to the extent he returned to work between December 2014 and October 2015. Tr. 80-82.

6

## A. Dr. Rosenberg

On March 25, 2015, Dr. Michael Rosenberg performed a consultative examination at the request of the state agency. Tr. 371. An ALJ may rely on the opinion of a consultative examiner. *See Camille v. Colvin*, 652 F. App'x 25, 27 n.2 (2d Cir. 2016); *Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician); 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

On physical examination, Plaintiff "appeared to be in acute distress secondary to back pain;" his gait was slow and deliberate with a noticeable limp; he could walk on heels but not toes; squat was 75% of full; cervical and lumbar range of motion ("ROM") were decreased; straight leg raise ("SLR") was positive bilaterally at 30 degrees with pain in the distal aspect of the thigh radiating to the back, confirmed in a sitting position; knee ROM was decreased; and hip ROM was decreased and elicited pain. Tr. 372-73. Dr. Rosenberg diagnosed moderate neck pain, moderate to severe back pain, and moderate pain in the knees. Tr. 374. He opined that Plaintiff "has restrictions for activities that require twisting and turning of the cervical spine" and he "has moderate to severe restrictions for activities that involve prolonged standing, walking, squatting, kneeling, bending, and lifting." Tr. 374. Dr. Rosenberg further opined that Plaintiff had moderate to severe restrictions for activities that involved prolonged standing, walking, squatting, kneeling, bending, and lifting. Tr. 374.

In discussing Dr. Rosenberg's opinion, the ALJ noted that the limitations suggested were "somewhat vague;" he also observed that the opinion was rendered prior to Plaintiff's October 2015 accident. Tr. 24. However, the ALJ explained that the opinion "was generally consistent with medical evidence of record showing a significant degree of limitation suggestive of sedentary

7

work" with additional limitations related to the need to change positions which could be accommodated by normal breaks. *Id*. The ALJ further limited Plaintiff in reaching based on Plaintiff's subjective complaints. *Id*.

In reviewing the medical evidence, the ALJ discussed Plaintiff's MRIs from 2015 and 2016. A lumbar spine MRI in January 2015 showed degenerative changes of the lower lumbar spine at L4-L5 with an interval progression of the right-sided neural foraminal narrowing and mild left neural foraminal narrowing; and a mild bilateral neural foraminal narrowing at L3-L4. Tr. 23, 382. Another MRI in December 2015 showed evidence of disc displacement with acquired spinal canal stenosis at the L4-L5 level. Tr. 23, 423. A February 2016 MRI of Plaintiff's thoracic spine showed right paracentral disc protrusions at T7-T8 and T8-T9. Tr. 23, 416. He additionally had shallow annular bulging at C4-C5 and C5-C6. Tr. 23, 417. The ALJ explained, however, that even after Plaintiff's accident in October 2015, an examination from September 2016 showed he had a normal gait and coordination and strength in all muscles. Tr. 23, 479-80. The ALJ also noted that Plaintiff's back pain was considered stable and managed conservatively. Tr. 23, 479-80. Furthermore, as noted above, MRIs taken of Plaintiff's back, both before and after his October 2015 accident, were unchanged since 2010 (Tr. 380, 382, 417, 404), and surgery was never recommended (Tr. 439).

Plaintiff argues that Dr. Rosenberg's opinion was stale because it was issued prior to Plaintiff's October 2015 automobile accident, which caused deterioration of his already existing back condition. *See* ECF No. 14-1 at 15 (citing *Jones v. Comm'r of Soc. Sec.*, 2012 WL 3637450, *2 (E.D.N.Y. Aug. 22, 2012) (finding that the ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition")).

8

. Plaintiff is generally correct that "an ALJ should not rely on 'stale' opinions—that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted). However, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order) (rejecting claimant's contention that State agency psychological consultant's opinion was "stale" because it did not have the benefit of later-submitted treatment records and treating physician evidence)); *Biro v. Comm'r of Soc. Sec.*, No. 6:17CV6098(EAW), 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018) ("However, a medical opinion is not necessarily stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.").

In this case, the ALJ discussed the subsequent medical evidence in detail (Tr. 23-24), and there is no indication that any later-received evidence "raise[s] doubts as to the reliability of Dr. [Rosenberg's] opinion." *Camille*, 652 F. App'x at 28 n.4. For example, the ALJ noted that Plaintiff treated with Andrew Cappuccino, M.D. ("Dr. Cappuccino") of Buffalo Spine Surgery in January 2015 and December 7, 2015. Tr. 24 (citing Tr. 387-80; 423-25). The December 2015 treatment note specifically records that Plaintiff's visit was for an initial consultation "for evaluation of injuries sustained in a motor vehicle accident that occurred on October 3, 2015." Tr. 423. The ALJ explained that he gave little weight to Dr. Cappuccino's January and 2015 opinions that Plaintiff

9

was disabled because "they contained no specific functional limitations and such a finding of disability is an issue reserved to the Commissioner" and "the opinion appears to be a temporary limitation, rather than opinion on functional limitations for twelve months or more." Tr. 24. Additionally, in April 2016, Dr. Cappuccino noted that Plaintiff ambulated independently without the use of an assistive device. Tr. 426. He also noted point tenderness over the mid back region, but his cervical range of motion was fairly good. *Id*. His upper extremity strength was noted as well maintained, and his sensation was intact. *Id*.

Furthermore, Plaintiff has not pointed to any record evidence that undermines the ALJ's assessment of Dr. Rosenberg's opinions. *See Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6-7 (W.D.N.Y. May 12, 2017) (explaining that a medical opinion issued two years prior to the ALJ's decision was not stale because there was no evidence that the claimant's condition had significantly deteriorated after the opinion was issued and it was consistent with the consultant's clinical examination and with the record as a whole). As the ALJ discussed, the objective medical evidence, including Plaintiff's MRIs which had not changed significantly after his accident. MRIs taken of Plaintiff's back, both before and after his October 2015 accident, were unchanged since 2010. Tr. 380, 382, 417, 404. As late as September 2016 (after his October 2015 accident), no significant musculoskeletal complaints were noted (Tr. 479); his gait was noted to be normal (Tr. 480); his back pain was considered stable and managed conservatively (Tr. 479-80); and surgery was never recommended (Tr. 439). Imaging studies of his cervical, thoracic and lumbar spine in 2016 were noted to be stable when compared to his studies before the 2015 accident. Tr. 428-30

Plaintiff's remaining arguments challenging the ALJ's consideration of Dr. Rosenberg's opinion are similarly unavailing. With respect to Plaintiff's argument that the ALJ did not actually

weigh the opinion, *see* ECF No. 14-1 at 12, the ALJ's discussion of the opinion demonstrates that he gave it some weight as he explained that the opinion was generally consistent with the medical evidence of records showing a significant degree of limitation suggestive of sedentary work with additional limitations. Tr. 24. Plaintiff also argues that since the ALJ indicated that Dr. Rosenberg's opinion was "somewhat vague," he should have re-contacted the doctor. *See* ECF No. 14-1 at 12-13. However, in this case, the doctor's opinion was not "too vague to rely upon in formulating the RFC," *Tolhurst*, 2016 WL 2347910, *5-6, and furthermore, as the ALJ explained, the opinion was consistent with other evidence in the record (Tr. 24).

"The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to recontact a treating physician. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. Oct. 25, 2012). As discussed above, the ALJ's discussion of the medical evidence is clear and thorough, and there was no reason to re-contact Dr. Rosenberg as the ALJ incorporated significant restrictions from the opinion related to Plaintiff's ability to stand, walk, squat, kneel, bend, and lift in his RFC finding.

Based on the foregoing, the ALJ's discussion of the medical evidence of record supported his assessment of Dr. Rosenberg's opinion, as well as his conclusion that an RFC for sedentary work accounted for all of Plaintiff's limitations. Tr. 23.

### B. NP Miller

Next, Plaintiff argues that the ALJ provided "conclusory" reasons for rejecting NP Miller's opinions. *See* ECF No. 14-1 at 14-15. The ALJ referenced three opinions submitted by NP Miller: (1) a progress note dated November 16, 2016 (Tr. 439-41); (2) a lumbar spine medical source statement dated February 6, 2017 (Tr. 469-77); and (3) a telephone encounter dated March 9, 2017 (Tr. 487). As discussed below, the ALJ sufficiently explained his reasoning for rejecting NP Miller's opinion, including his finding that the opinion was inconsistent with other medical evidence of record.

In the lumbar medical spine statement, NP Miller noted that Plaintiff's objective signs included positive supine SLR left at 20 degrees and right at 20 degrees; positive seated SLR; abnormal gait; reflex loss; tenderness; muscle spasm; motor loss; muscle atrophy; muscle weakness; and impaired sleep. Tr. 470. She opined that Plaintiff could not walk without experiencing severe pain or needing to rest; he could sit for one hour at a time and stand for 30-45 minutes at a time; he could sit, stand, and walk, in combination, for less than two hours, and he was "unable to do any type of work." *Id*. She also opined that he needed a cane for ambulation and could not lift or carry any weight, and he could never twist, stoop, crouch/squat, climb ladders, or climb stairs. Tr. 471. She opined that he would be off-task 25% or more of the workday and he would miss more than four days of work per month. Tr. 471-72. In a cervical spinal questionnaire, she opined to the same limitations. Tr. 473-76. She further opined that he could use his hands to grasp, turn or twist objects, and perform fine manipulations 10% of the time and use his arms for reaching in front or overhead 20% of the time. Tr. 476.

The ALJ first explained that NP Miller was not an acceptable medical source. Tr. 24. Nurse practitioners do not constitute "acceptable medical sources" pursuant to Social Security Ruling

06–3p ("SSR 06–3p"). SSR 06–3p 2006, WL 2329939, at *2 (SSA Aug. 9, 2006); *Marrese v. Colvin*, No. 15-CV-6369, 2016 WL 5081481, at *2 n.1 (W.D.N.Y. Sept. 16, 2016) (finding that a nurse practitioner is not a medical doctor and thus, is not an "acceptable medical source" as defined in 20 C. F. R. § 404.1513(a))). "[T]he ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir. 1995). SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006); *see also Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) ("By definition then, the controlling weight afforded to a 'treating source' 'medical opinion' is reserved for the medical opinions of the claimant's own physician, psychologist, and other acceptable medical source.").

In determining the weight to be given to the opinions from both "acceptable medical sources" and "other medical sources," the ALJ must consider the following six factors: "the length and frequency of the treating relationship; the nature and extent of the relationship; the amount of evidence the [source] presents to support his or her opinion; the consistency of the opinion with the record; the [source's] area of specialization; and any other factors the claimant brings to the ALJ." *Carlantone v. Astrue*, No. 08 Civ. 07393(SHS), 2009 WL 2043888, at *5 (S.D.N.Y. 2009); *See* 20 C.F.R. § 416.927(d); SSR 06–03P. After weighing these factors, the ALJ may determine the weight to be afforded to the opinion of any medical source, provided that the ALJ explains that decision. *See Saxon v. Astrue*, 781 F.Supp.2d 92, 104 (N.D.N.Y. 2011). The record in this case establishes that the ALJ considered these factors and explained his decisions.

In discussing NP Miller's opinions, the ALJ acknowledged that Plaintiff had a treating relationship with NP Miller, but he also explained that her opinions appeared to be based Plaintiff's subjective complaints; they were inconsistent with medical evidence of record showing a lesser degree of limitation; and they were inconsistent with evidence that Plaintiff's symptoms could be

13

managed conservatively. Tr. 24. When NP Miller completed her February 2017 statement indicating extreme limitations, her last treatment note was from November 2016. Tr. 439-40. Her examination findings from that date indicated that Plaintiff showed good strength in all extremities and a normal gait. Tr. 440. Although NP Miller indicated on the form that Plaintiff had an abnormal gait and muscle atrophy, this was inconsistent with her last treatment note reporting that Plaintiff showed good strength in all extremities and a normal gait. Tr. 440. Similarly, although NP Miller's treatment notes reflect that Plaintiff experienced decreased ROM, the ROM measurements she reported on the form (Tr. 473) are not found in her treatment notes (*see, e.g.*, Tr. 439-40). These inconsistencies warranted rejecting NP Miller's opinion. Moreover, as discussed above, other evidence supported the ALJ's conclusion that Plaintiff's back pain was not as severe as alleged and thus provided a basis for rejecting NP Miller's extreme limitations. Contrary to Plaintiff's assertions, the ALJ properly discounted this opinion. *See Hill v. Berryhill*, No. 6:17-cv-06532, 2019 WL 144920, at *5 (W.D.N.Y. Jan. 9, 2019) (The ALJ has the discretion "to discount a treating physician's [opinion] where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning." (internal citations and quotations omitted)).

In sum, the ALJ considered each of the medical opinions in the record and explained which portions of the opinions he had rejected. The ALJ acted within his discretion when he afforded different degrees of weight to the opinions and medical evidence in the record. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (The ALJ "was entitled to weigh all of the medical evidence available to make an RFC finding that was consistent with the record as a whole."). An ALJ considers medical opinions as to a claimant's level of functioning, but he must ultimately reach an RFC assessment based on the record as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)

("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Despite Plaintiff's assertions to the contrary, substantial evidence supported the ALJ's RFC, and the Court finds no error in the ALJ's assessment of the medical opinion evidence.

## II. The Appeals Council Properly Considered Plaintiff's Additional Evidence.

Plaintiff argues that evidence submitted to the Appeals Council confirmed Plaintiff's subjective complaints of pain and thus support NP Miller's opinion(s). *See* ECF No. 14-1 at 15-16. Plaintiff submitted medical reports from Cheryle Hart, M.D. ("Dr. Hart"), and Mikhail Strut, M.D. ("Dr. Strut"), at RES Physical Medicine & Rehab Services ("RES"), dated April 6, 2017 (Tr. 40-47), April 20, 2017 (Tr. 32-39), and March 21 through April 26, 2017 (Tr. 48-67). Plaintiff also submitted treatment records from Lake Shore Behavioral Health ("Lake Shore") dated January 6, 2016 through July 24, 2017. Tr. 106-125. The Appeals Council determined this additional evidence did not show a reasonable probability that it would change the outcome of the decision, and thus, did not consider and exhibit the additional evidence. Tr. 1-8. However, the Court notes there is no mention of the Appeals Council's rejection of records from Lake Shore in Plaintiff's brief.

As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45. The regulations expressly authorize claimants to submit new and material evidence[2] to the Appeals Council

---

[2] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

15

without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)).

In addition, the new evidence should be treated as part of the administrative record. *Id*. The Appeals Council is required to "evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b). *Id*. "Therefore, when the Appeals Council denies review after considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id*. (citing *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Accordingly, the administrative record before this Court consists of all evidence submitted before this decision, including any new evidence that was not before the ALJ.

Plaintiff argues the Appeals Council erred in failing to consider additional evidence regarding Plaintiff's treatment with Dr. Strut. *See* ECF No. 13-1 at 11, 15-16. The Court finds the additional evidence from Dr. Strut (and his RES associate, Dr. Hart) demonstrated not that Plaintiff's back condition had worsened, but rather, that he was using lethal mixtures of fentanyl and heroin he obtained on the street to treat his back pain. Tr. 57, 64. Dr. Strut finally stopped seeing Plaintiff because of his addiction to dangerous street drugs in that he could not safely treat him based on his non-compliance. Tr. 66.

On March 21, 2017, Plaintiff saw Dr. Hart at RES complaining of neck and back pain, headaches, and bilateral knee pain. Tr. 48. Plaintiff reported that these symptoms were present prior to his October 2015 accident, but they increased in severity at that time. *Id*. On physical examination, Plaintiff had limited ROM of the cervical and lumbar spine; tenderness to palpation, myospasms, and trigger point tenderness of the cervical, thoracic, and lumbar spines. Tr. 50-51.

Percussion over the spinous processes in the cervical and lumbar spines produced pain bilaterally; cervical compression test was positive on the left; motor strength was decreased in the upper and lower extremities; tandem walk was with pain; and Plaintiff could not perform heel/toe walk. *Id*. Plaintiff was assessed with chronic back pain with radicular symptoms and associated headaches and knee pain. Tr. 51.

At the March 21, 2017 visit, Plaintiff reported to Dr. Hart that he was taking "HYDROCODONE 10/325 one tablet 6 times daily," stating it decreased his pain adequately at least 50%, allowing improved daily function. Tr. 49. According to the treatment note, Plaintiff stated "medications allow[ed] improved daily functioning, denie[d] significant side effects, and exhibit[ed] no addictive or aberrant behaviors. Tr. 51. Plaintiff was advised of the risks and benefits of medications, including dependency and addiction potentials of controlled drugs. *Id*. Plaintiff had enough Hydrocodone to last until April 5, at which time he would return to RES to discuss treatment options with Dr. Strut. Tr. 51.

Plaintiff saw Dr. Strut on April 5, 2017. Tr. 54-58. On physical examination, Plaintiff had similar findings to his previous exam. Tr. 56. He continued to show reduced ROM in the cervical and lumbar spine. *Id*. Dr. Strut noted that Plaintiff had limitations with repetitive bending, twisting, and lifting, as well as prolonged walking, sitting, and standing, and interrupted sleep pattern. *Id*. Dr. Strut also noted he had no diagnostic studies to review. Tr. 54. During the visit, Plaintiff admitted to using heroin, tramadol, and another pain medication. *Id*. Dr. Strut reviewed the results of a urine toxicology screen which detected large amounts of opiates (heroin), fentanyl, and tramadol and observed that Plaintiff had a significant opiate tolerance since he was "taking approximately 1000mg of morphine equivalence or more daily." Tr. 57-58. Dr. Strut stated the toxicology "prove[d] his evaluation of dangerously excessive use of opiates and an inability to

manage Plaintiff's addiction as [an] outpatient." Tr. 58. Dr. Strut "discussed with the patient at great details [the] concept of opiate addiction," even though Plaintiff claimed he did not "hav[e] good understanding of directions and [] a very poor grasp of his conduct." Tr. 57. Plaintiff told Dr. Strut he had never used or abused opiate drugs, including heroin, prior to his accident and blamed his addiction on previous providers who prescribed him opiates. *Id*. Plaintiff received a prescription for Suboxone, but he was told not to fill the prescription with any subsidized, government program. Tr. 57. However, when Plaintiff's prescription was denied by his insurance company, he tried to use Medicaid, and Dr. Strut ultimately canceled the prescription due to non-coverage. Tr. 57.

An April 6, 2017 sensory pain fiber nerve conduction report indicated "evidence highly suggestive of" lumbar radiculopathy involving the L2, L3, and L5 nerve roots. Tr. 42. An April 20, 2017 nerve conduction study indicated very severe pathology at the right C4 suprascapular nerve, right C4 axillary nerve, left C5 axillary nerve, right C6 radial nerve, and left C6 radial nerve, and marked pathology at the right C7 radial, left C7 radial, right C8 ulnar, and left C8 ulnar nerves. Tr. 34. The study suggested irritation at the greater occipital, posterior division of the cervical nerve, first thoracic nerve, and second thoracic nerve. *Id*.

Plaintiff returned to Dr. Strut on April 19, 2017. Tr. 59. Dr. Strut discussed with Plaintiff and his girlfriend that Plaintiff's heroin addiction and the mixture he was taking had the potential for his demise. Tr. 62. Dr. Strut also discussed the terms of his willingness to prescribe Plaintiff Suboxone. Tr. 62-63. Plaintiff followed up with Dr. Strut on April 26, 2017. Tr. 64-65. Plaintiff said because he could not get insurance coverage for Suboxone, he sought it on the street and also continued to use heroin and illicit fentanyl. Tr. 64. Plaintiff also continued to smoke marijuana. Tr. 64. Dr. Strut indicated that Plaintiff had a very difficult case of opiate addiction that was too

18

complicated for outpatient treatment and carried a significant risk of mortality. Tr. 66. Plaintiff's physical examination findings on April 19 and 26, 2017 were similar to previous exams. Tr. 59-67.

Plaintiff argues that the record evidence from Dr. Strut confirmed Plaintiff's subjective complaints of pain and thus supported Ms. Miller's opinion. *See* ECF No. 13-1 at 15-16. However, although Plaintiff contends that the ALJ rejected NP Miller's opinion specifically because he found it was based on Plaintiff's subjective complaints" (*see id*. at 15), the ALJ also explained that other medical evidence was inconsistent with NP Miller's opinion (Tr. 24). Furthermore, in giving Plaintiff a sedentary limitation with a number of additional limitations, the ALJ agreed that Plaintiff's back pain resulted in some significant limitations. Tr. 22-25. However, the ALJ did not agree that those limitations were so severe as to be disabling. Tr. 22-25. Moreover, the notes from Dr. Strut's office indicate that he needed to obtain a copy of Plaintiff's MRI reports. Tr. 52. Thus, Dr. Strut's office had not seen the MRI reports that were extensively discussed by the ALJ, and which were relatively unchanged since 2010 (Tr. 23, 380, 382).

Plaintiff also fails to address the fact that he had not been reporting to his medical providers that he was self-medicating; he had developed a significant opiate tolerance; and he was taking a potentially lethal mixture of heroin and fentanyl. Tr. 57-58. As noted above, although Plaintiff also submitted records from Lake Shore to the Appeals Council, Plaintiff's brief presents no arguments as to this additional evidence. *See generally* ECF No. 13-1. Notably, Plaintiff fails to mention that among the additional evidence he submitted—and declined to mention in his brief—is an initial psychiatric evaluation at Lake Shore on July 14, 2017. Tr. 117. Plaintiff told Lake Shore he did not abuse alcohol or other drugs; he stated he drank beer about two years ago but stopped when he was put on medications. *Id*. However, as recounted above, Plaintiff had just three months prior

19

admitted his drug use to Dr. Strut, and received strong counseling from Dr. Strut about the dangers of opioid addiction.

Upon review, the Court finds the treatment notes from RES and Dr. Strut focused primarily on addressing Plaintiff's addiction issues and do not show any significant change in the objective evidence related to Plaintiff's back pain. Tr. 57-78. Accordingly, this evidence does not show a reasonable probability of changing the ALJ's decision. Accordingly, the Appeals Council did not err. *See Carbee v. Comm'r of Soc. Sec.*, No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *6 (N.D.N.Y. Jan. 9, 2018) (distinguishing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) and finding no error by Appeals Council, where the new records "[did] not strongly suggest that Plaintiff's conditions were far more serious than at the time of the ALJ's decision.").

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 19) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE